

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

August 30, 1944

Honorable Clifford B. Jones, President
Texas Technological College
Lubbock, Texas

Dear Sir:

Opinion No. O-6098

Re: Statutory authority
for Texas Technologi-
cal College to execute
Marketing Contract and
related questions.

We have your letter reading as follows:

"It will be appreciated if at your convenience
you will please advise whether this College, through
its Board of Directors, has the authority to exe-
cute a marketing contract and thus become a member
of the Texas Certified Seed Growers Association, a
non-profit cooperative association, with its prin-
cipal office and place of business at Lubbock. Copy
of such marketing contract is attached hereto.

"It is probable that the College is in about
as good shape as the Texas Certified Seed Growers
Association to dispose satisfactorily of the excess
grain sorghum seed raised on this campus. The prin-
cipal reason therefore why the College would be in-
terested in having membership is to evidence our
faith in the objectives sought by the said Seed
Growers' Association, namely the production and dis-
tribution of better seed."

From the marketing contract you enclosed we quote cer-
tain pertinent provisions:

"MARKETING CONTRACT
OF THE
TEXAS CERTIFIED SEED GROWERS ASSOCIATION

"The Texas Certified Seed Growers Association,
a non-profit, co-operative Association, with its

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Clifford B. Jones, page 2

principal office and place of business at Lubbock, in Lubbock County, Texas, hereafter referred to as 'Association' and the undersigned, hereinafter referred to as 'Breeder', AGREE:

". . .

"2. The Breeder agrees to deliver to the Association all of each variety of State Certified Grain Sorghum Seed now on hand or produced by him or for him or acquired by him as landlord or tenant for ten (10) crop years from and after date of this contract.

". . .

". . .

"4. Title to such Grain Sorghum Seed shall pass to the Association upon delivery. The Association may borrow money and pledge the Grain Sorghum Seed or other assets as security for loans.

"5. The Association shall re-sell said Grain Sorghum Seed as it deems best under market conditions, and shall deduct from the proceeds of sale thereof, freight, insurance, storage and interest, as well as the cost of operating and maintaining the Association, and in addition thereto, in the discretion of the Board of Directors reserves not to exceed five (5) per cent of the gross re-sale price of said Grain Sorghum Seed. All reserves shall become a permanent continuing fund of the Association, unless distributed as and when conclusively determined by the Board of Directors; and each member's interest in such Reserve fund shall be in proportion to his contribution thereto as approved by the Board of Directors. The Breeder agrees that reserves deducted under any previous marketing contract between him and the Association shall hereby become subject to the provisions of this contract.

". . .

". . .

Honorable Clifford B. Jones, page 3

". . .

"9. If for any reason the Breeder fails or re-
fuses to deliver all of his State Certified Grain
Sorghum Seed covered by this contract as herein pro-
vided, or sells any State Certified Seed as individ-
ual property or fails to report sales and to deliver
proceeds of Sales to Association Secretary, then and
in that event he shall be held to have breached his
contract, and shall pay to the Association liquidated
damages in the sum of 25¢ per bushel on all Grain
Sorghum Seed withheld or sold, and a reasonable at-
torney fee and costs of suit, which shall be due and
payable at Lubbock, Lubbock County, Texas. Breeder
furthermore agrees in this case to surrender his
license to the State Seed and Plant Board and dis-
continue growing State Certified Seed, and must re-
turn all unused Association Brand Bags to Association
at prevailing price of bags at the time.

". . .

". . ."

We have examined the statutes creating and affecting the
College and we are of the opinion the Board of Regents is without
authority to enter into the contract you enclosed. It is true
that Article 2629 authorizes the College to give instruction in
agricultural pursuits, and Article 2631 makes it the duty of the
Board to provide the facilities that will enable the student body
to pursue courses in farm husbandry. These statutes do, of course,
authorize the College to make it possible for the students to do
original and research work in agriculture, such as the breeding
and marketing of sorghum seed. It is a wholly different matter,
however, when it is proposed in connection with that authorized
College activity to enter into a contract with a private agency
for the marketing of College or State property. Especially is
this true when the contract contains a provision for liquidated
damages and attorneys fees, or provides for a commission not ex-
ceeding five per cent for the private concern's services.

It seems to be well settled in Texas that universities
and colleges, like other corporations, have only such powers as
are granted in their charters or by governing statutes. R. B.
Spencer & Co. v. Thorp Springs Christian College, 41 S.W. (2d)
482; 42 Tex. Jur., p. 821, sec. 4.

Honorable Clifford B. Jones, page 4

This is even more true of public colleges and universities. The members of the Board of Regents of a state college are officers of the state. Such state schools are purely creatures of the Constitution and laws of Texas. The only powers or charters they can have are those granted by the Legislature. Splawn v. Woodard, 287 S.W. 677; 42 Tex. Jur., p. 822, sec. 5.

Finally, we point out that state officers can make no binding contract without previous authority conferred by law. State v. Perlstein, 79 S.W. (2d) 143; 38 Tex. Jur., p. 840, sec. 22.

Since we have concluded there is no statutory authority for it, we advise the College should not execute the contract.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By Elbert Hooper
Elbert Hooper
Assistant

EH/JCP

APPROVED SEP ___, 194_

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN